UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 04-61159-CIV-LENARD/TORRES

STEPHEN J. MAZUR, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

IRA B. LAMPERT, HARLAN PRESS,
RICHARD FINKBEINER, BRIAN F. KING
and CONCORD CAMERA CORP.,

      Defendants.

**DEFENDANTS' MOTION TO COMPEL LEAD PLAINTIFF TO
DISCLOSE THE IDENTITIES OF THE CONFIDENTIAL WITNESSES
AND ACCOMPANYING MEMORANDUM OF LAW**

Defendants, by and through their undersigned counsel and pursuant to Rule 37 of the Federal Rules of Civil Procedure, respectfully request that this Court issue an Order compelling Lead Plaintiff, Stephen J. Mazur ("Plaintiff"), to fully disclose the identities of the five (5) Confidential Witnesses upon which the substantive allegations in the Consolidated Class Action Complaint (the "Complaint") are based.[1] Despite his affirmative use of *direct quotations* by the Confidential Witnesses in the Complaint, Plaintiff has refused to disclose their identities to Defendants in discovery. Defendants simply seek to compel the disclosure of the Confidential Witnesses' identities so that Defendants are able to depose them during the discovery period, determine whether their statements are as represented in the Complaint, and prepare to meet their

---

[1] The undersigned has conferred with counsel for Plaintiff with regard to the discovery issues contained herein and has been unable to reach an agreement.

testimony at trial. Without the possibility of even speaking to the Confidential Witnesses, Defendants cannot adequately prepare their defenses to Plaintiff's allegations. In addition, Plaintiff's refusal to disclose the Confidential Witnesses' identities is particularly burdensome given the discovery schedule in this case. Accordingly, the Court should enter the attached proposed order compelling Plaintiff to disclose the five Confidential Witnesses forthwith.

## MEMORANDUM OF LAW

### INTRODUCTION

On or about August 31, 2005, Plaintiff served his Complaint for violations of the federal securities laws. The Complaint relies mostly on information obtained from five (5) Confidential Witnesses, who are identified throughout the Complaint as "CW1" through "CW5" and vaguely described by reference to their employment positions with Defendant, Concord Camera Corp. ("Concord"). At least thirty-three (33) paragraphs or subparagraphs in the section of the Complaint titled "Substantive Allegations" contain statements allegedly made by the Confidential Witnesses. Many of those statements purport to be direct quotes by the Confidential Witnesses. *See* Complaint, ¶¶ 33-47, 52, 54-62, 64-65, 74-75, 92, 100-101, 147-148.

On or about November 21, 2006, Defendants propounded their First Request for Production of Documents ("Defendants' Document Requests") and First Set of Interrogatories ("Defendants' Interrogatories") on Plaintiff. Among the discovery propounded were requests for production and interrogatories relating to the identities of the various Confidential Witnesses. *See* Defendants' Document Requests No. 2; Defendants' Interrogatories No. 1 (a-d). On or about January 12, 2007, Plaintiff served his responses to Document Request No. 2. *See* Plaintiff's Responses to Defendants' First Request for Production of Documents Numbered One

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Through Eight ("Plaintiff's Response to Document Requests 1-8"), which is attached hereto as Exhibit "A." Subsequently, on January 29, 2007, Plaintiff responded to Defendants' Interrogatories, including Interrogatory No. 1 (a-d). *See* Plaintiff's Responses to Defendants' First Set of Interrogatories to Stephen Mazur, attached hereto as Exhibit "B." In his response to both the document requests and the interrogatories, Plaintiff objected and refused to disclose the identities of the Confidential Witnesses or produce any documents that might identify them. This Motion followed.

## ARGUMENT

Under the federal rules, a party is permitted to discover the identity and location of witnesses. *See* Fed. R. Civ. P. 26(b)(1). In this case, the substantive allegations of the Complaint are based on information obtained from the Confidential Witnesses. In numerous instances, the Complaint quotes the Confidential Witnesses directly. Those facts notwithstanding, Plaintiff maintains in his responses to Defendants' discovery requests that he does not have to specifically identify the individuals who purportedly made those statements. His unequivocal refusal to disclose their identities violates notions of fundamental fairness and undermines the federal rules on discovery. *See American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 107 F.R.D. 258, 260 (N.D. Ill. 1985) (observing that discovery under the federal rules "changed the entire concept of litigation from a cards-close-to-the-vest approach to an open-deck policy. It seeks to facilitate open and evenhanded development of the facts underlying a dispute, so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems.").

Plaintiff makes three specific objections to disclosing the identities of the Confidential Witnesses, each of which is discussed more fully in the balance of this memorandum of law. First, Plaintiff objects on the ground that the identities of the Confidential Witnesses are attorney

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

work product. *See* Ex. B, Plaintiff's Response to Interrogatory No. 1 (A-D), pp. 5-6. However, this objection largely ignores the nature of Defendants' request and the case law on point. Furthermore, even assuming *arguendo* that the identities of the Confidential Witnesses were protected from disclosure under the work product doctrine - which they are not - such protection is easily overcome by the undue burden on the Defendants of conducting a "needle-in-the-haystack" search of Plaintiff's Rule 26(a)(1) disclosures to attempt to guess at who, from among the 95 possible witnesses listed, the Confidential Witnesses are. Second, Plaintiff objects to disclosing the identities of the Confidential Witnesses on the basis of the attorney-client privilege. *See id.* Plaintiff cannot make the requisite showing to sustain this objection. Third, Plaintiff essentially argues that the Confidential Witnesses' identities are somehow protected under the informant's privilege because disclosing them to Defendants "would chill informants from providing critical information which may end up being in the public eye." *Id.* This argument is mere rhetoric. In truth and in fact, Defendants have not intimidated nor retaliated against any witness disclosed in Plaintiff's Rule 26(a)(1) disclosures. Furthermore, even if the informant's privilege applies, its qualified protection is easily overcome by Defendants' undue burden.

I.  **THE WORK PRODUCT DOCTRINE DOES NOT PROTECT THE DISCLOSURE OF THE CONFIDENTIAL WITNESSES' IDENTITIES**

   A.  **The Identities Of The Confidential Witnesses Are Not Work Product**

Plaintiff bears the burden of establishing that the work-product doctrine applies to the identities of the Confidential Witnesses. *See Donald R. Jackson v. Geometrica, Inc.*, No. 304-CV-640J20-HTS, 2006 WL 510059, *1 (M.D. Fla. March 2, 2006) (citing *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990)) (holding that "the party resisting discovery bears the burden of demonstrating the applicability of the work product doctrine"); *see*

4

*also* Rule 26(b)(3), Fed. R. Civ. Pro. It is generally accepted that the "work product doctrine does not protect against the disclosure of facts or the identity of persons from whom the facts are learned." *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, No. C01-20418JW, 2005 WL 1459555, * 4 (N.D. Cal. June 21, 2005). *See Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 440, 444 (D. Kan., 1987) (finding that the work product doctrine does not shield the discovery of documents or people with knowledge of the facts relevant to plaintiffs' claim); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2023 (stating that before and after the amendment to Rule 26, "the courts consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts").

Although there are no published opinions from courts in this district directly on point, at least one court in the Eleventh Circuit has held, under analogous facts, that the identities of confidential witnesses were <u>not</u> protected by the work product doctrine.[2] In *In re Theragenics Corp. Securities Litigation*, 205 F.R.D. 631 (N.D. Ga. 2002), the plaintiff filed a securities fraud class action alleging that the defendants defrauded the investing public by touting the success of a Theragenics product without disclosing the circumstances that would adversely affect future demand for the product. *Id.* at 632. As in this case, the substantive allegations in the complaint were based on information obtained from confidential sources including current and former employees of the defendant company and contained direct quotes by the confidential sources. *Id.* at 633. On defendant's motion to compel, the court ordered the plaintiff to disclose the identities of the confidential sources. The court expressly rejected the plaintiff's argument that disclosure of the identities of the confidential sources would reveal the mental processes and legal theories

---

[2] The *Cigna* case cited in Plaintiff's responses to discovery does not address the work product doctrine.

5

of the plaintiff's attorneys by demonstrating which witnesses had been interviewed by his counsel (and thus, which witnesses the plaintiff valued most):

> The fact that those individuals described in the Second Amended Complaint were interviewed by Plaintiffs' counsel during its investigation in anticipation of litigation does not change the Court's conclusion. The Supreme Court in Hickman v. Taylor made clear that the work product doctrine protects against the disclosure of an attorney's mental processes and legal opinions; the critical question is the extent to which the information discloses an attorney's thought processes. The disclosure of the names and addresses of those individuals interviewed by Plaintiffs' counsel will not reveal the 'mental impressions, conclusions, opinions, or legal theories of [Plaintiffs'] attorneys.'

*Id.* at 634 (quoting *In re Aetna Inc., Sec. Litig.*, 1999 WL 354527, *3 (E.D. Pa. 1999). Furthermore, the court stated that its decision was consistent with the case of *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464 (11th Cir. 1984), in which the Eleventh Circuit held that the names and addresses of the witnesses the plaintiff had interviewed were discoverable. *Id.* at 635. The court found "no reason to disregard the Eleventh Circuit's guidance in [*Castle*]" since that case "accurately describes the state of the law in this area . . . ." Accordingly, "[t]he burden is upon the Plaintiffs to provide compelling reasons of public policy or manifest injustice for the Court to depart from a road map laid out by a panel of the Eleventh Circuit" in that case. *Id.* (internal citation omitted).[3]

As in *Theragenics*, the disclosure of the identities of the Confidential Witnesses in this case will not provide Defendants any insight into Plaintiff's attorneys' thought processes or litigation strategy, and Plaintiff cannot provide any compelling reason for concealing this information. To be clear, Defendants <u>do not</u> seek to discover the identities of *every* individual

---

[3] In addition, the court found that the disclosure of names and addresses of persons interviewed by the plaintiffs' counsel was consistent with the policy considerations underlying the Private Securities Litigation Reform Act of 1995 (PSLRA). *Id.* at 636. *See In re Northpoint Communications Group, Inc., Securities Litigation*, 221 F. Supp.2d 1090 (N.D. Cal. 2002) (ordering plaintiff to disclose the identities of confidential witnesses upon which he relied to obtain information to meet heightened pleading requirements of the PSLRA).

6

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

CASE NO.: 04-61159-CIV-LENARD/TORRES

Plaintiff's counsel may have interviewed in connection with this case. Rather, Defendants seek only the names of the five individuals specifically cited as sources for the substantive allegations in the Complaint - presumably the very persons whom Plaintiff will call to testify on those matters at trial. This is an important distinction recognized in the case law. For example, in *Board of Education of Evanston Township High School District No. 202 v. Admiral Heating and Ventilating, Inc.*, the court denied the defendant's request for disclosure of all persons interviewed by the plaintiffs' attorneys (and by implication, those who were not interviewed), because that information, when coupled with the inevitable disclosure of which of them were anticipated witnesses, would afford the defendants significant insights into the plaintiff's trial preparation and mental processes. 104 F.R.D. 23, 32 (N.D. Ill. 1984).

However, within a year of its decision in *Admiral Heating*, the same court, in *American Floral Services, Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258 (N.D. Ill. 1985) ordered plaintiff to identify the witnesses interviewed by its attorneys. In that case, the plaintiff had identified over 200 witnesses having knowledge of the defendant's procedures, but refused to identify specifically the two employees having inculpatory information. *Id.* at 260. The plaintiff was compelled to disclose the two employees' identities because the defendant already knew the nature of the plaintiff's claim and "the mere identification of persons who know facts bearing on that claim tells [the defendant] nothing new about the mental processes of plaintiff's counsel." *Id.* at 262. In explaining the different outcomes in *Admiral Heating* and *American Floral*, the court explained that the request in *Admiral Heating*, in which the defendant sought the identification of all persons interviewed by the plaintiff's counsel was akin to forcing the party who propounds a document request to reveal which documents from those produced to him are or are not important. Under those circumstances, "the opposing party thus learns about the

7

CASE NO.: 04-61159-CIV-LENARD/TORRES

lawyer's sorting of wheat from chaff" and "obtains 'disclosure of the mental impressions, conclusions, opinions, or legal theories of [the] attorney. . . concerning the litigation.'" *Id.* at 261-62. In contrast, the court characterized the request in *American Floral* to identify two interviewees from the universe of 200 potential witnesses as "wheat-from-chaff information of a very different kind: It gives the identity of the few people in that large group who assertedly know of [defendant's] misconduct, but as to [plaintiff's] theory of such misconduct it reveals nothing. . . . ." *Id.* at 262.[4]

As in *American Floral,* the disclosure by Plaintiff of the identities of the five Confidential Witnesses from among the 95 individuals listed in Plaintiff's Rule 26(a)(1) disclosures, would not provide any insight into Plaintiff's litigation strategy. The manner in which the Complaint is structured already reveals that the Confidential Witnesses are witnesses that Plaintiff considers important, and Defendants already know the nature of Plaintiff's allegations. The disclosure of the identities of the Confidential Witnesses cannot possibly contain any additional work-product content over and above what has already been revealed. Yet, by withholding the witnesses' identities, Plaintiff is denying Defendants their rights under the discovery rules to depose these individuals and prepare their defenses. This Court should not permit Plaintiff to prosecute his case in a shroud of secrecy.

---

[4] A similar result was reached in *Plumbers and Pipefitters Local 572 Pension Fund.* There, the court found that some of the defendant's interrogatories were contrary to the law because they requested the identities of "all persons that [plaintiffs] interviewed during the course of their investigation." 2005 WL 1459555, at *5. However, the court ordered the plaintiffs to respond to other interrogatories requesting the identities of "'all PERSON(S) . . . [Plaintiffs] contend to have information supporting' particular allegations'" in the complaint. The court concluded that although the responses to those interrogatories "may include names of persons interviewed," the interrogatories did not "specifically request a list of persons interviewed by Plaintiffs' counsel." *Id.* (emphasis in original) (internal citations omitted).

### B. Defendants Have A Substantial Need For The Confidential Witnesses' Identities And Obtaining Them Independently Would Be Unduly Burdensome

But even if the Confidential Witnesses' identities were work product, which they are not, Plaintiff would not be able to overcome the Defendants' showing of "substantial need" or "undue hardship." *See, e.g., Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996). Given that the majority, if not all, of the substantive allegations in the Complaint derive from information obtained directly from the Confidential Witnesses, Plaintiff is hard pressed to argue that Defendants do not have a substantial need to learn the identities of the Confidential Witnesses. In fact, Plaintiff essentially concedes that Defendants have such a need by inviting Defendants to try to figure out who the witnesses are from the list of ninety-five (95) names in Plaintiff's Rule 26(a)(1) disclosure. *See* Exhibits "A" and "B." However, the fact that Defendants might be able to absorb the cost of taking countless superfluous depositions in order to discover the identities of the five Confidential Witnesses, is not a reason to limit Defendants' discovery rights, waste their resources, or unnecessarily burden the other individuals listed.

To be sure, Defendant Concord has attempted to determine the names of the Confidential Witnesses *on its own* by comparing its internal records with the general employment descriptions provided in the Complaint and Plaintiff's Rule 26(a)(1) disclosure. Defendants have only managed to narrow the list of potential witnesses who fit the employment descriptions provided by Plaintiff, and thus, would still have to takes numerous depositions to try to ascertain the Confidential Witnesses' specific identities. This process would be costly, inefficient, and consume most of the discovery period, which is currently scheduled to conclude on May 1, 2007. In addition, taking those depositions would likely cause Defendants to exceed the ten deposition limit imposed by the federal rules. Furthermore, there are no guarantees that these deposition

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

will yield the Confidential Witnesses' specific identities. The deponents may refuse to answer Defendants' questions, or even fail to appear for the deposition. Defendants are not aware of any case - and Plaintiff cites non - which suggests that a requesting party who attempts to winnow the list on his own but fails to ascertain the identities of the witnesses, will just have to live without that information until trial.

The question is whether the burden of forcing Defendants to embark on this "needle-in-the-haystack" search outweighs the Plaintiff's interest in concealing the Confidential Witnesses' identities. Other courts who have confronted this issue under analogous circumstances have answered this question affirmatively. For instance, in *In re Aetna Inc. Sec. Litig.*, as in this case, the plaintiff framed the allegations of his complaint as having been based on interviews with former employees of the defendant, who were described only by their former employment positions. 1999 WL 354527, *2 (E.D. Pa. May 26, 1999). The defendant's interrogatories sought the names and addresses of these specific former employees and the names and addresses of each supporting witness who was the basis for allegations in specific paragraphs in the complaint. *Id.* Plaintiff responded by providing, *inter alia*, the names of 750 individuals with knowledge relevant to the allegations in fifteen paragraphs in the complaint and the names of 200 individuals with knowledge relevant to the allegations in one paragraph alone. *Id.* Defendant moved to compel the plaintiff to specifically identify, by name and address, the former employees who were identified by reference to their employment position in specific paragraphs in the complaint. *Id.* at *1. The court granted the defendant's motion on the grounds that the names and addresses of the persons relied upon by the plaintiff to support specific allegations in the complaint are not protected by the work product doctrine. *Id.* at *2. According to the court, the defendant would be unduly prejudiced if it were forced to ferret out the veritable

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

"needle-in-the-haystack" by interviewing or deposing up to 750 individuals. *Id.* at *4. *See Plumbers and Pipefitters Local 572 Pension Fund*, 2005 WL 1459555, at *5 (finding that "[s]ifting through the 496 names listed under the "Current or Former Employees of Cisco" section alone was clearly burdensome, and only hinders the development of facts to enable the Defendants to prepare a defense against Plaintiffs' claims").

Similarly, the court in *American Floral* found that the defendants' ability to distill the two names from a list of 200 people would be "time-consuming, wasteful and expensive." 107 F.R.D. at 261. According to the court, the process of taking numerous depositions to ascertain the witnesses' identities should not be forced on the defendants just because the alternative of disclosure makes the job easier for the defendants at the plaintiffs' expense. *Id.*

The fact that in those cases the number of individuals listed in the Rule 26 disclosure was more numerous as compared to this case <u>does not</u> excuse Plaintiff's refusal to disclose the Confidential Witnesses' identities. In fact, courts have granted motions to compel the disclosure of confidential witnesses' identities where the Rule 26 list was substantially shorter than Plaintiff's 95-person list. For example, in *Theragenics* the court granted the defendants' motion to compel the disclosure of the confidential witnesses' identities from among a list of fifty-four (54) employees. 205 F.R.D. at 633, 635-636. *See In re Nortel Networks Sec. Litig.*, No. 01 CV 1855 (S.D.N.Y. June 11, 2003) (Order) (62-name list); *Oregon Health & Science Univ. v. Vertex Pharms., Inc.*, 2002 WL 31968995, at *1-*2 (D. Or. Oct. 24, 2002) (57-name list). Even though the court in *Computer Associates International, Inc. v. Quest Software, Inc.* deemed the list of employees in the plaintiff's Rule 26 disclosure to be "manageable" and found that defendants had "an opportunity to interview these employees on their own," it ordered disclosure because it found that "disclosure of the names is extremely unlikely to have a prejudicial effect on

11

[plaintiff] or give defendants any insight into its preparation for litigation." 2003 WL 22159022, at *1 (N.D. Ill. Sept. 17, 2003).[5] Thus, the number of persons listed in Plaintiff's Rule 26(a)(1) disclosure is not determinative of this issue, particularly where, as here, the disclosure of the information does not reveal any work product.

One factor that has figured prominently in the courts' determination of undue burden is the defendants' ability to ascertain the identities of the confidential witnesses for themselves under the discovery schedule. For example, in *Miller v. Ventro Corp.*, the plaintiffs relied heavily on information provided by twenty-two confidential witnesses. 2004 WL 868202, *1 (N.D. Cal. April 21, 2004). In their Rule 26(a)(1) disclosure, the plaintiffs listed more than 200 persons with discoverable information, of which at least 165 appeared to fit the various confidential witness descriptions in the complaint. Plaintiffs refused to identify specifically the twenty-two confidential witnesses, relying upon the work product doctrine. *Id.* The court granted defendant's motion to compel, in part, because of the "compressed discovery schedule." *Id.* at *2. The court found that "[t]he fact discovery cutoff of September 2, 2004 is rapidly approaching [in approximately four-and-a-half months], all motions must be heard by November 9, 2004 and trial begins on January 19, 2005. . . . It would be unfair to permit Plaintiffs to rely so heavily on the [Confidential Witnesses] in the complaint, yet to keep those identities from Defendants, especially given the schedule in this case." *Id.* See *Plumbers and Pipefitters Local 572 Pension Fund*, 2005 WL 1459555, at *5 (finding that defendants made the requisite showing of substantial need and undue hardship due, in part, to the fact the discovery cut-off date was approximately three months away).

---

[5] In fact, the court ordered the plaintiff to produce the full list of current and former employees of defendant that it had interviewed (in addition to its Rule 26(a)(1) disclosures) -- which is more than Defendants are requesting in this case, and less than what Plaintiff has turned over in this case. See *Computer Associates*, 2003 WL 22159022, at *1.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

As in those cases, Defendants will be unduly burdened if they are required to ascertain the identities of the Confidential Witnesses for themselves under the discovery schedule in this case. Currently, fact discovery is schedule to conclude in approximately *two months*, on May 1, 2006. This is substantially less than the four-and-a-half months that remained in *Miller*, and less than the three months that remained in *Plumbers and Pipefitters Local 572 Pension Fund*, when the courts granted the defendants' motions to compel the identities of the confidential witnesses in those cases.[6]

In sum, Plaintiff cannot seriously dispute that Defendants have a substantial need to learn the Confidential Witnesses' identities, or that Defendants would encounter undue hardship if forced to undertake an independent quest for that information. Especially in cases such as this one where the disclosure of the witnesses' identities will not give the defendants any insight into the plaintiff's attorneys' work product, courts have ordered disclosure. This Court should follow suit and grant Defendants' Motion.

## II. THE IDENTITIES OF THE CONFIDENTIAL WITNESSES ARE NOT PROTECTED UNDER THE ATTORNEY-CLIENT PRIVILEGE

In order to carry his burden that the names of the Confidential Witnesses are within the attorney-client privilege, Plaintiff must show that he, or any other putative class member, disclosed the names of those witnesses to his attorneys for the purpose of securing legal advice or assistance in this matter. *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973). The nature of this case strongly suggests that Plaintiff cannot sustain his burden. This is a class action brought on behalf of members of the investing public who purchased Concord securities from

---

[6] Under the Joint Motion to Modify Scheduling Order To Extend All Remaining Deadlines By 90 Days and To Continue Trial Date - on which this Court has yet to rule - the deadline to complete all fact discovery is July 1, 2007. *See* **D.E. #82**. Even under that deadline, Defendants would have only about five months from the date of this Motion to try to ascertain the Confidential Witnesses identities, which is comparable to the time that remained in *Miller*.

13

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

August 14, 2003 through August 31, 2004. The members of the putative class, including Plaintiff, were determined *after* Plaintiff's attorneys had conducted their investigation into the Defendants' internal practices and interviewed the various Confidential Witnesses. It was only after the attorneys had obtained information from the Confidential Witnesses that they were able to determine the Class Period and the composition of the class.

Therefore, it defies reason to suggest the Plaintiff's attorneys learned the identities of the Confidential Witnesses from their clients.[7] Indeed, it is highly unlikely that Plaintiff's attorneys even spoke to any class member, including Plaintiff, about the Confidential Witnesses *prior* to interviewing them, or that any class member – as a member of the investing public – personally knows or has ever communicated with the Confidential Witnesses, all of whom were allegedly employees of Concord during the Class Period. Accordingly, the Court should have little difficulty dispensing with Plaintiff's objection on the basis of the attorney-client privilege.

### III. THE INFORMANT'S PRIVILEGE DOES NOT PROTECT DISCLOSURE OF THE CONFIDENTIAL WITNESSES' IDENTITIES IN THIS CASE

#### A. Plaintiff Cannot Make A Particularized and Specific Demonstration Of Fact That Any Witness Has Been Threatened By Retaliation Or Might Be So Threatened In The Future

In seeking protection under the informant's privilege Plaintiff bears the burden of justifying his objection. *See Miller,* 2004 WL 868202, at *9; *Plumbers and Pipefitters Local 572 Pension Fund,* 2005 WL 1459555, at *7. Relying singularly on *In re Cigna Securities Litig.,* No. Civ A 02-8088, 2006 WL 263631 (E.D. Pa. Jan. 31, 2006), Plaintiff contends that it is not required to disclose the identities of the Confidential Witnesses' identities because doing so

---

[7] Plaintiff has not alleged that an attorney-client relationship exists between its counsel and the Confidential Witnesses. If such a relationship did exist, however, the attorney-client privilege would nevertheless not apply to the interrogatories at issue. The attorney-client privilege extends to communications, but not to all facts which may be learned in the course of such communications. *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 440, 444 (D. Kan. 1987) (compelling plaintiff to disclose the names of confidential witnesses "from whom the facts are learned).

14

"'would chill informants from providing critical information which may end up being in the public eye.'" *See* Exhibit B (citation omitted). While long on rhetoric, Plaintiff's argument is devoid of any factual support whatsoever. Plaintiff does not purport to rely on any facts that would show that Defendants have threatened any witness disclosed in its Rule 26 disclosure, or that any of the Confidential Witnesses is currently employed by, or is seeking employment with Concord. *See Plumbers & Pipefitters,* 2005 WL 1459555, at *7 (granting the defendant's motion to compel because, *inter alia,* the "[p]laintiffs have never provided a declaration or any other evidence even hinting that any witness has the slightest concern about retaliation"). In *Management Inf. Tech., Inc. v. Alyeska Pipeline Serv. Co.,* the court denied a motion to compel production of documents that would reveal the identities of confidential sources because it was "'troubled" by specific allegations of illegal intimidation by the defendant. 151 F.R.D. 478, 480, 482-83 (D.D.C. 1993). Here, by contrast, there are no allegations of any act of intimidation by Defendants. Because Plaintiff cannot make a particular and specific demonstration of fact, as distinguished from mere conclusory statements and rhetoric, Plaintiff's arguments must fail.[8]

If there were a legitimate concern of retaliation - which there is not - Plaintiff undoubtedly would have requested a protective order restricting access to the Confidential Witnesses' identities. That he has not done so further confirms the lack of any genuine foundation for his argument. *See Plumbers & Pipefitters,* 2005 WL 1459555, at *7 (finding that the plaintiffs' failure to request that the court enter a protective order to limit the disclosure of the witnesses' identities, weighed against the plaintiffs' "whistleblower" argument).[9]

---

[8] In any event, the argument is undermined by Plaintiff's own assertions that he has already disclosed names the Confidential Witnesses in his Rule 26(a)(1) disclosure, and that Defendants can readily identify them.

[9] To the extent the identities of the Confidential Witnesses are disclosed, Defendants agree to enter into a protective order which prohibits them from engaging in retaliatory conduct against any witness, including the Confidential Witnesses.

15

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

### B. Defendants Can Make A Particularized Showing Of Undue Burden To Overcome The Informant's Privilege

In any event, Plaintiff's reliance on *Cigna* as a basis for his unequivocal refusal to identify the Confidential Witnesses is misplaced. As a threshold point, *Cigna* is an unpublished opinion from Pennsylvania and is not binding on this Court. Moreover, *Cigna* was decided on the basis of the informant's privilege, and it is questionable whether such a privilege even exists in the context of civil cases. *See Plumbers & Pipefitters Local 572 Pension Fund,* 2005 WL 1459555, * 7. But even assuming it applies in the civil context, the informant's privilege is not absolute. This means that whatever qualified protection it may offer can be overcome by a particularized showing of undue prejudice by Defendants. Thus, when the *Cigna* court declared that the application of the informant's privilege is subject to a "balancing test" (2006 WL 263631, at *1), it was merely echoing *Roviario v. United States,* in which the Supreme Court of the United States found that:

> [A] limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

353 U.S. 53, 60-61 (1957).[10] At most, *Cigna* requires the party seeking disclosure of a confidential informant's identity to make a showing of prejudice or undue burden to overcome the informant's privilege.

In *Cigna,* the defendant was unable to make a particularized showing of undue burden because it had not yet undertaken the independent quest of trying to ascertain the confidential

---

[10] In general, the informant's privilege is "the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 8 C. Wright and A. Miller, Federal Practice and Procedure, § 2019 at 155 (1970). Courts that have considered the informant's privilege in the civil context have looked to *Roviario*, a criminal case, for guidance when considering the application of the privilege. *See generally* Annotation, Application, in Federal Civil Action, of Governmental Privilege of Nondisclosure of Identity of Informer, 8 ALR Fed. 6 (1971 and Supp. 1986).

16

informants' identities.[11]  Accordingly, the court denied the defendant's motion to compel. However, the court suggested it might reconsider its ruling if, after undertaking such a quest, the defendant still was unable to ascertain the witnesses' specific identities from among a longer of list of potential witnesses:

> The Court will therefore dismiss CIGNA's motion **without prejudice** and order Plaintiff to respond to CIGNA's interrogatories designed to elicit from Plaintiff the identity of individuals with relevant knowledge . . . . Plaintiff shall craft its responses, to each paragraph or substantively similar group of paragraphs contained in the Revised Amended Complaint. **Should Plaintiff's responses bring about an unreasonable, 'needle in the haystack' scenario, such as that which occurred in <u>In re Aetna Securities Litigation</u> or <u>Miller v. Ventro Corp.</u>, CIGNA may renew its motion with the Court.**

*Id.* at *4 (emphasis supplied).[12]  Thus, the court refused to order the disclosure of the confidential witnesses' identities unless, and until, the defendant was able to make a particularized showing that he had been unduly burdened by embarking on a "needle in the haystack" search of the confidential informants' identities.

In this case, Defendants are able to make such a showing.  Putting aside the fact that Defendants have been forced to defend a case without the ability of deposing, let alone interviewing, the individuals who purport to have the most knowledge about the allegations in the Complaint, Defendants have already expended time and resources trying to discover, on their own, the specific identities of the Confidential Witnesses.  Despite their efforts, Defendants find themselves precisely in the position contemplated by the court in *Cigna* of trying to ferret out the veritable "needle-in-the-haystack."  If the Motion is denied, Defendants will have to depose

---

[11] At the time the issue arose in that case, the plaintiff had not yet disclosed the identities of individuals with relevant knowledge about the allegations in the complaint. Therefore, the defendant could not possibly have attempted to distill the names of the confidential informants from a list of potential witnesses.

[12] Notably, the court in *Cigna* required the plaintiff to correlate the names of individuals possessing relevant knowledge with specific paragraphs or groups of paragraph in the complaint (*see Cigna*, 2006 WL 263631, at *4), which is more than Defendants are requesting, and less than what Plaintiff has turned over in this case.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

numerous individuals to try to determine the Confidential Witnesses' specific identities. Those depositions will be costly, consume most of the discovery period, and likely cause Defendants to exceed the ten deposition limit imposed by the federal rules. The situation has reached the point where, to paraphrase the Supreme Court in *Roviario,* any protection afforded by the informant's privilege must give way under the weight of Defendants' undue burden.

If any public policy is relevant here, it is the policy of assuring fairness in litigation.[13] If Plaintiff has his way, the identities of the Confidential Witnesses will be concealed from Defendants until very late in discovery or after discovery closes, so that Defendants would be precluded from deposing them. Their identities would be revealed for the first time in Plaintiff's witness list for trial. In effect, Plaintiff is asking this Court to sanction trial by ambush, which the federal discovery rules were designed to prevent.

## CONCLUSION

As the court explained in *American Floral*: "Discovery under the [Federal] Rules changed the entire concept of litigation from a cards-close-to-the-vest approach to an open-deck policy. It seeks to facilitate open and evenhanded development of the facts underlying a dispute, so that justice may be delivered on the merits and not shaped by surprise or . . . tactical stratagems." 107 F.R.D. at 260. Plaintiff is using "tactical stratagems" in refusing to lay his cards on the table and allow discovery to proceed sensibly and efficiently. The Court should not sanction Plaintiff's conduct and grant Defendants' Motion to Compel.

---

[13] In addition, both *Aetna* and *Theragenics* hold that disclosure of witness identities furthers the PSLRA policy of preventing strike suits. *See* 1999 WL 354527, at *4 (E.D. Pa. May 26, 1999); 205 F.R.D. 631, 637 (N.D. Ga. 2002).

18

CASE NO.: 04-61159-CIV-LENARD/TORRES

Date: February 23, 2007

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Counsel for Ira B. Lampert, Harlan Press, Richard Finkbeiner, Brian F. King, and Concord Camera Corporation*

1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: _____
Hilarie Bass, Esq.
Florida Bar No. 334243
bassh@gtlaw.com
Holly R. Skolnick, Esq.
Florida Bar No. 390860
skolnickh@gtlaw.com
Ricardo A. Gonzalez, Esq.
Florida Bar No. 691577
gonzalezr@gtlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 23, 2007 a true and correct copy of the foregoing was served via facsimile and U.S. Mail upon: Kenneth Vianale, Esq., Vianale & Vianale LLP 2499 Glades Road, Suite 112 Boca Raton, FL 33431; and Robin Switzenbaum, Esq., Berger & Montague P.C. 1622 Locust Street Philadelphia, PA 19103.

_____
RICARDO A. GONZALEZ

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com