UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 04-61159-CIV-LENARD/TORRES

STEPHEN J. MAZUR, individually and on behalf of )
all others similarly situated, )
)
        Plaintiff, )
)
v. )
)
IRA B. LAMPERT, HARLAN PRESS, RICHARD )
FINKBEINER, BRIAN F. KING and CONCORD )
CAMERA CORP., )
)
        Defendants. )
                                                      /

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL LEAD PLAINTIFF TO DISCLOSE THE IDENTITIES OF THE CONFIDENTIAL WITNESSES**

Plaintiff's position is quite simple: he can refuse to disclose specific information regarding anonymous fact witnesses who are directly quoted in the Complaint and who possess the most relevant knowledge about the facts underlying Plaintiff's specific allegations. Plaintiff conjures up a parade of excuses -- none of which is persuasive -- for why he believes he is permitted to conceal that information in response to simple discovery requests designed to promote the truth-finding process, facilitate Defendants' preparation of their defenses and avoid unfair surprise at trial. Both the relevant legal authority and the rules of fair play command disclosure by Plaintiff, so that, at the very least, Defendants can examine those witnesses before the conclusion of fact discovery in **42 days**.

I.    **THE WORK PRODUCT DOCTRINE DOES NOT APPLY**

Plaintiff has failed to carry his burden of establishing that the identification of the Confidential Witnesses ("CWs") is protected under the work product doctrine. In an attempt to meet this burden, Plaintiff misconstrues Defendants' interrogatories and cites cases that address a

wholly different issue, namely, whether work product protection extends to the identities of all persons interviewed by counsel in anticipation of litigation. Though Plaintiff would pretend otherwise, there is a difference between, on the one hand, interrogatories that ask a party to identify all persons interviewed in anticipation of litigation, and interrogatories that seek the identification of persons who are expressly quoted in the Complaint and/or represented to have specific knowledge about the complaint allegations, on the other. The former situation was the issue in *Electronic Data Systems Corp. v. Steingraber*, U.S. Dist. LEXIS 11816, at *3 (E.D. Tex. June 27, 2003), and *In re Ashworth, Inc. Securities Litigation*, 213 F.R.D. 385, 386 n.1 (S.D. Cal. 2002), two cases upon which Plaintiff relies. *See* Opp. 7, 8. The latter situation is the issue in this case, as it was in *In re Aetna, Inc. Sec. Litig.*, 1999 WL 354527 (E.D. Pa. May 26, 1999), *American Floral Services, Inc. v. Florists' Transworld Delivery Association*, 107 F.R.D. 258 (N.D. Ill. 1985), *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002).

It is no oversight that Plaintiff fails to quote Defendants' interrogatories, which as confirmed by the example below, fall into the second category:

> Identify, to the extent not previously identified, "confidential witness" referred to in paragraph 33, of the Complaint;
> Identify, to the extent not previously identified, "confidential witness" referred to in paragraph 34, of the Complaint;
> Identify, to the extent not previously identified, "confidential witness" referred to in paragraph 174, of the Complaint;

(Exhibit B, Motion to Compel at 5). The weight of authority holds that there is no work product protection shielding the identification of anonymous witnesses in response to interrogatories of this nature. For instance, in *Aetna* the interrogatories read: "'State the names and addresses of the following persons described in the Complaint. . . .'" 1999 WL 354527, at *1. Each sub-part of the interrogatory contained a specific quotation from a specific paragraph of the complaint. *Id.* The plaintiff objected based on the work product doctrine, and argued, as does Plaintiff in

this case, that the interrogatories were seeking "'the name and address of each of the persons interviewed in connection with the allegations set forth in. . .the [Second Amended] Complaint.'" *Id.* (internal citations omitted). The Court rejected this argument and ordered the plaintiff to identify the anonymous witnesses: "Defendants are merely seeking the disclosure of a specific subcategory of all potential fact witnesses: those that are described in Plaintiffs' Second Amended Complaint." *Id.* at *3. <u>Significantly, the Court held that "[t]he fact that those individuals described in the Second Amended Complaint were interviewed by Plaintiffs' counsel during its investigation in anticipation of litigation does not change the Court's conclusion." *Id.*</u> (emphasis supplied). *Accord American Floral*, 107 F.R.D. at 261 (ruling that while disclosing "the identities of all persons interviewed" might implicate the work-product doctrine, disclosing the identities of anonymous witnesses expressly referred to in the complaint does not); *Theragenics*, 205 F.R.D. at 634 (relying on *Aetna* to issue a similar holding); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555, * 5 (N.D. Cal. Jun. 21, 2005) (ordering identification of persons with information about particular allegations in the complaint, because while "these interrogatories may include names of persons interviewed, it does not specifically request a list of persons interviewed").

  Plaintiff's attempt to distinguish those cases completely misses the mark. In a nutshell, Plaintiff claims they are distinguishable because the number of potential witnesses with relevant information was more numerous in those cases, as compared to this case. *See* Opp. at 10, 11. If Defendants were citing those cases for the proposition that they would suffer an "undue hardship" if required to conduct their own investigation to ascertain the identities of the CWs, Plaintiff's purported distinction potentially would be relevant, as courts sometimes consider the "manageability" of the number of potential witnesses in evaluating the requesting party's "undue

3

hardship." But Defendants rely on those cases for an entirely different proposition: that the work product doctrine does not shield the identification of confidential witnesses in response to interrogatories that request the names of persons who are expressly quoted in the complaint and/or who are represented to have knowledge of relevant facts. Plaintiff does not -- because he cannot -- distinguish those cases on that basis.

Indeed, the only case Plaintiff cites that actually holds that the mere identity of an anonymous sources cited in a complaint "includes work product content" is *In re MTI Tech Corp. Sec. Litig. II*, 2002 WL 32344347, at *3 (CD. Cal. June 13, 2002), an unpublished Central District of California opinion. Opp. at 10.[1] But even that case is unavailing. First, *MTI* has been undermined by more recent rulings of the California federal courts, such as *Miller v. Ventro Corp.*, No. C01-01287 2004 WL 868202 (N.D. Cal. April 21, 2004) (holding that a list of twenty-two anonymous witnesses does not constitute work product), and *In re Northpoint Communications Group, Inc. Sec. Litig.*, 221 F. Supp. 2d 1090, 1098 (N.D. Cal. 2002) (ordering plaintiff to disclose the identities of anonymous witnesses relied upon in the complaint). Second, the holding in *MTI* has been rejected by courts in this federal judicial circuit. *See, e.g., Theragenics,* 205 F.R.D. at 636 (finding that "discovery of the names of the persons referenced in the [complaint] would not provide any insight into Plaintiffs' counsel's litigation strategy"). Third, the court in *MTI* did not confront a situation like the one in this case, where the Complaint quotes specific individuals for facts crucial to Plaintiffs' ability to state a claim and then seeks to hide the source of those supposed statements from Defendants. Far from it. In *MTI*, the court

---

[1] Plaintiff also cites *Ashworth*, but that case is inapposite. The interrogatories there requested much more information than do Defendants' interrogatories, including the identification of individuals, interviewed, but not explicitly relied upon in the complaint. *See Ashworth*, 213 F.R.D. at 386 n.1. Unlike in that case, there can be no concern, here, that by revealing the identities of the CWs, Defendants will be able to infer which witnesses Plaintiff's counsel considers important and which ones she does not, based on whether such witnesses are cited (*i.e.*, important), or not cited (*i.e.,* not important), in the Complaint. Defendants' interrogatories are limited to a specific subcategory of potential witnesses: those that are cited in the Complaint, and Defendants already know Plaintiff's counsel considers them important based on how heavily the Complaint relies upon them.

contemplated that the anonymous sources might not even testify at trial. 2002 WL 32344347, at *5. Unless Plaintiff can confirm that the CWs will not testify at trial in this matter, their identities must be disclosed to Defendants.

Finally, Plaintiff musters only the vaguest of references to the work product he purports to protect, namely, that if the CWs' identities were disclosed, Defendants would be able to infer which witnesses Plaintiff considers important, thus, revealing mental impressions and trial strategies. *See* Opp. at 7, 8. Plaintiff's purported rationale for resisting disclosure is a "red herring." To reiterate, Defendants' interrogatories do not request the identification of all persons interviewed by Plaintiff's counsel. If they did, then potentially Defendants would be able to infer which witnesses Plaintiff's counsel considers important based on whether such witnesses are cited or not cited in the Complaint. However, Defendants' interrogatories merely ask Plaintiff to identify the five CWs who Defendants already know are considered important by Plaintiff's counsel, given how heavily the Complaint relies on their purported statements. Put simply, because there is no "work product" to protect, the Motion to Compel should be granted.

## II.   DEFENDANTS HAVE MADE A SHOWING OF "SUBSTANTIAL NEED" AND "UNDUE HARDSHIP"

But even if the identities of the CWs were considered work product (and, as shown above, they are not), Defendants would still be entitled to discover this information because they have made a showing of "substantial need" and "undue hardship." *See* Fed. R. Civ. P. 26(b)(3). Incredibly, Plaintiff contends that "'the identities of the confidential informants do not go to the heart of the case and are at best marginally relevant to the issues at stake in this litigation'" (Opp. at 6 (quoting *Mgmt. Info Techs,* 151 F.R.D. at 482-83)). This allegation is simply not credible. The Court need only examine the Complaint to determine that the CWs are not, as Plaintiff alleges, tangential with no bearing on the issues to be litigated, but rather, so integral to

the allegations in the Complaint that, without them, Plaintiff could likely not state a claim. Moreover, by expressly pleading his allegations on the basis of statements provided by the CWs, Plaintiff has made their identities highly relevant and discoverable. *See* Rule 26(b)(3), Fed. R. Civ. P. (providing that the identities of individuals "having knowledge of any discoverable matter" are relevant); *Miller,* 2004 WL 868202, at *2 (holding that the identities of the confidential informants was highly relevant and reasonably calculated to lead to discoverable evidence); *Theragenics,* 205 F.R.D. at 634 (same). Accordingly, because the CWs are used to support the most critical allegations in the Complaint, Defendants have a "substantial need" to discover their specific identities. Defendants cannot fairly be expected to defend themselves without examining those individuals before trial. *See Miller,* 2004 WL 868202, at *2 (holding that it would be unfair to permit the plaintiff to rely so heavily on the confidential informants in the complaint, yet to keep their identities from defendants).

Plaintiff also claims that Defendants would suffer no "undue hardship" if forced to conduct their own investigation to ascertain the identities of the CWs from what Plaintiff deems to be a "manageable" list of 38 "former employees"[2] listed in Plaintiff's Rule 26(a)(1) disclosure. While possessing a certain superficial appeal, this argument truly has no merit. Although, Plaintiff cites several cases for the proposition that 38 is a "manageable" number of potential witnesses, he fails to account for the looming May 1, 2007 discovery cut-off and the obvious impact it would have on Defendants' ability to contact, interview, or depose 38 witnesses in **42 days**. Indeed, Plaintiff fails to controvert the cases cited in Defendants' Motion

---

[2]   Plaintiff repeatedly asserts that the Complaint *specifically* identifies the CWs as "former employees" of Concord Camera Corp. ("Concord"). *See, e.g.,* Opp. at. 2, 10, 11, 12. This is simply not true. Defendants only learned that the CWs were all former employees upon receiving Plaintiff's Opposition. Plaintiff's argument that Defendants are in the best position to know the information possessed by the CWs, is specious. The mere fact that the CWs are former employees of Concord, does not mean that Defendants know the specific information they purport to possess. In addition, Plaintiff's argument ignores the fact that most, if not all, of these individuals left their employment years ago, whereas Plaintiff's counsel has had contact with them much more recently.

to Compel which hold that a showing of "substantial need" and "undue hardship" may be satisfied when the discovery cut-off date is only a few months away and the requesting party will not have enough time to ascertain the witnesses' identities on his own. *See* Mot. at 12-13. That determination applies with even greater force in this case because Defendants would have *days*, not months, to interview or depose 38 individuals. On this basis alone, Defendants are able to establish "undue hardship."

But even assuming Defendants could accomplish such a Herculean feat, an independent investigation by Defendants is unlikely to uncover the specific identities of the CWs. First, it is unlikely that all 38 individuals would voluntarily agree to be interviewed by Defendants. The fact that the CWs are alleged to have spoken to Plaintiff on the basis of anonymity suggests otherwise. Second, even assuming that all 38 individuals consented to an interview, they would be under no legal obligation to answer Defendants' questions truthfully. Thus, a CW could conceal or misrepresent the information he or she provided to Plaintiff. While deposing, rather than interviewing, them might decrease the chances of that happening, Defendants, nevertheless, would encounter undue hardship. The 38 depositions not only would be inordinately costly, but also would consume the remaining discovery period. In addition, Defendants would be forced to exceed the ten deposition limit imposed by the Federal Rules. Recently, Magistrate Judge Edwin G. Torres expressed his reluctance to grant such "extraordinary discovery" beyond the "normal limit[s]" set forth in the Rules, and admonished that the Court "will not grant leave to take more than ten depositions past the date of the discovery cutoff." Order Denying Plaintiff's Emergency Motion to Take in Excess of Ten Depositions, dated February 28, 2007, ¶¶ 7, 8. But regardless of whether the CWs are interviewed or deposed, the truth is that they may not know or remember the specific quotes attributed to him or her in the Complaint. Only Plaintiff is in a position to say

7

to whom he has attributed those quotes.

Seemingly unable to deny the obvious -- that Defendants would suffer undue hardship if required to conduct their own investigation in a mere 42 days -- Plaintiff urges the Court to disregard the effects the compressed discovery schedule would obviously have on Defendants' ability to interview or depose the 38 witnesses in that span of time. Plaintiff asserts that any undue hardship Defendants may face in that regard is attributable to Defendants' own failure to interview potential witnesses in the months since Plaintiff served his Rule 26(a)(1) disclosure. Opp. at 12. That Plaintiff does not cite a single case in support of his position is telling, because, in fact, there is no requirement that Defendants conduct any such interviews.[3] Thus, although the court, in *Computer Associates International, Inc. v. Quest Software, Inc.*, deemed the list of witnesses in the Rule 26 disclosure to be "manageable" and <u>found that defendants had "an opportunity to interview these employees on their own,"</u> it ordered plaintiff to disclose the specific identities of its confidential sources. 2003 WL 22159022, at *1 (N.D. Ill. Sept. 17, 2003). In short, Plaintiff has failed to overcome Defendants' showing of "substantial need" and "undue burden."

### III.   PLAINTIFF FAILS TO ESTABLISH THAT PUBLIC POLICY PRECLUDES DISCLOSURE

In seeking whistleblower protection to shield the disclosure of the CWs, Plaintiff bears the burden of justifying the need for that protection. *See Miller,* 2004 WL 868202, at *9. Plaintiff fails to carry his burden because he does not -- indeed cannot -- make a "particular and specific demonstration of fact," as compared to "stereotyped and conclusory statements," to establish a need for whistleblower protection. *Plumbers & Pipefitters,* 2005 WL 1459555, at *7.

---

[3] The case law only requires the party requesting disclosure of the anonymous witnesses' identities to have attempted to identify those witnesses from a longer list of potential witnesses. *See* Opp. at 13. As set forth in the Motion to Compel, Defendants have tried to narrow the list of potential witnesses in Plaintiff's Rule 26(a)(1) disclosure, but still have been unable to ascertain the specific identities of the CWs. *See* Mot. to Compel at 9.

While Plaintiff scoffs at the suggestion that he must proffer evidence of actual or threatened retaliation or harassment by Defendants (*see* Opp. at 5), this is precisely the type of particularized showing he is required to make. The court in *Plumbers & Pipefitters*, declined to apply whistleblower protection to shield the identities of current and former employees upon whom the plaintiff based his allegations because the plaintiff failed to provide "any evidence indicating that there is a real fear of retaliation from [the defendants]." 2005 WL 1459555, at *7. Furthermore, the Court stated that it was "unaware of any request to enter a protective order to limit the disclosure of these witnesses' identities, which weighs against Plaintiffs' whistleblower argument." *Id.* *See Miller,* 2004 WL 868202, at *9 (declining to enter a protective order limiting the disclosure of witnesses' identities because there was no evidence of any likelihood of retaliation); *In re Initial Public Offering Sec. Litig.,* 220 F.R.D. 30, 37 (S.D.N.Y. 2003) (declining to enter a protective order because the plaintiff failed to show the "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements") (citation omitted). The same result should issue in this case, as there is not one scintilla of evidence that Defendants have threatened, harassed or retaliated against any witnesses.

Instead of pointing to facts suggesting the threat of retaliation, Plaintiff relies on the Sarbanes-Oxley Act (the "Act") and the fact that protection of whistleblowers factored into the denials of motions to compel in a few select cases. Contrary to the impression Plaintiff tries to create, there is no controlling "public policy" under the Act to preclude this Court from compelling the disclosure of the CWs. To be sure, numerous cases decided after the Act was passed have refused to apply whistleblower protection to shield the disclosure of the identities of current and former employees. *See, e.g., Plumbers & Pipefitters*, 2005 WL 1459555, at *7; *Miller,* 2004 WL 868202, at *9; *In re IPO Sec. Litig.,* 220 F.R.D. at 37. Moreover, the Act says

9

nothing about the discovery obligations of parties who choose to sue others on the basis of statements from purported whistleblowers. *See In re IPO Sec. Litig.,* 220 F.R.D. at 37. Plaintiff concedes as much in his Opposition. *See* Opp. at 14 fn.9 (conceding that the PSLRA did not effectuate a revision of the discovery rules). Furthermore, the Act does not eviscerate or take precedence over Defendants' broad discovery rights under the Federal Rules of Civil Procedure. As one court observed: "While it is important to protect whistle-blowers, it is also important, once the whistle is blown, to allow all parties an equal opportunity to engage in the robust discovery permitted by the Federal Rules." *In re IPO Sec. Litig.,* 220 F.R.D. at 37.

In addition, none of the cases cited by Plaintiff in which whistleblower protection factored into the denial of motions to compel, is persuasive, much less, binding on this Court. Two of the cases, *MTI* and *Ashworth*, improperly extended the narrower holding of a Fifth Circuit case (*Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303 (5th Cir. 1972)) and, as noted above, have been undermined by the more recent decisions from the California federal courts. A third case cited by Plaintiff, *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co.,* is inapposite because, unlike in this case, there were specific allegations of illegal intimidation by the defendant. 151 F.R.D. 478, 480, 482-83 (D.D.C. 1993). Finally, Plaintiff fails to establish why this Court should follow *In re Cigna Corp. Secs. Litig.*, 2006 WL 263631 (E.D. Pa. Jan. 31, 2006). Not only is it an unpublished opinion from the Eastern District of Pennsylvania, but, as established in the Motion to Compel, is factually distinguishable from the present case. *See* Mot. at 16-17. The only policy that is relevant in this case is that endorsed by the Supreme Court: "[m]utual knowledge of all the relevant facts gathered by both sides is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

## CONCLUSION

For the foregoing reasons and those set forth in the Motion to Compel, Defendants respectfully request that this Court order Plaintiff to disclose the specific identities of the five Confidential Witnesses who are expressly cited in the Complaint and who purport to have the most knowledge about the facts supporting the allegations pled therein.

Date:  March 19, 2007                                       Respectfully submitted,

                                                                               GREENBERG TRAURIG, P.A.
*Counsel for Ira B. Lampert, Harlan Press,*
*Richard Finkbeiner, Brian F. King, and*
*Concord Camera Corporation*

1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717


By: /s/ Ricardo A. Gonzalez
    Hilarie Bass, Esq.
    Florida Bar No. 334243
    bassh@gtlaw.com
    Holly R. Skolnick, Esq.
    Florida Bar No. 390860
    skolnickh@gtlaw.com
    Ricardo A. Gonzalez, Esq.
    Florida Bar No. 691577
    gonzalezr@gtlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 19, 2007, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ Ricardo A. Gonzalez        
RICARDO A. GONZALEZ

## SERVICE LIST

Robin Switzenbaum, Esq.,
Berger & Montague P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4679
Facsimile: 215-875-4604
Email: rswitzenbaum@bm.net
*Counsel for Plaintiff*

Kenneth Vianale, Esq.,
Vianale & Vianale LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone: (561) 392-4750
Facsimile: (561) 392-4775
*Counsel for Plaintiff*

John J. Rizzo
Stryker Tams & Dill LLP
2 Penn Plaza East
Newark, NJ 07105
Telephone:  (973) 491-9500
Facsimile:   (973) 491-9692
Email:  jrizzo@strykertams.com
*Counsel for Defendants*